IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN WUTHERICH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-00200 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | Magistrate Judge Maureen P. Kelly |
| RICE ENERGY INC., a.k.a | ) | |
| EQT RE LLC, | ) | *Electronically Filed* |
| | ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Rice Energy Inc., a.k.a. EQT RE LLC ("Rice"), through its undersigned counsel, submits this brief in support of its partial motion to dismiss Counts I and II of the First Amended Complaint filed by Kevin Wutherich ("Plaintiff").[1] For the reasons explained below, Count I should be dismissed with prejudice, and Count II should be dismissed with prejudice insofar as it as it is based on the allegations related to EOG Resources (i.e., paragraphs 41 through 66).

**I.     INTRODUCTION**

Plaintiff worked as the Director of Completions for Rice from May 2015 until his termination in October 2016. First Am. Compl. ("FAC") ¶ 7. He was terminated after Rice uncovered that he had been working for another company, Drill2Frac, yet went months without disclosing the full extent of that relationship to Rice. *Id.* ¶ 74.

---

[1] In Counts III and IV, Plaintiff asserts claims for age and national origin discrimination under Title VII and the PHRA. Rice denies that Plaintiff's age or his Canadian national origin had anything to do with his termination but is not moving to dismiss those claims. Unless ordered otherwise, Rice will answer them after the Court issues a ruling on this partial motion to dismiss. *See Gortat v. Capala Brothers, Inc.*, 257 F.R.D. 353, 366 (E.D. N.Y. 2009) ("Fed. R. Civ. P. 12(a)(4) … provides that the service of a motion pursuant to Rule 12 suspends the movant's time to file a responsive pleading until [14] days following the disposition of the motion. Interpreting that rule, courts have held that filing a partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion.").

In the First Amended Complaint, Plaintiff claims that Rice retaliated against him for engaging in whistleblowing activity protected by the Dodd-Frank Act, 15 U.S.C. § 78u-6(h) ("Dodd-Frank"), and Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A. Plaintiff fails to state a claim under Dodd-Frank and also fails to state a claim, in part, under SOX.

First, the United States Supreme Court has held that to qualify as a "whistleblower" under Dodd-Frank, an individual must report the alleged fraud to the SEC **before** his termination. Plaintiff, however, did not report anything to the SEC until **after** his termination. FAC ¶ 88(d)(i)-(iv). Thus, he was not a "whistleblower" under Dodd-Frank when he was terminated, and, as a result, this claim fails as a matter of law.[2]

Second, with respect to his SOX claim, Plaintiff alleges that "[t]here were two whistleblowing events; the first involving Silver Creek Services and the second involving EOG resources." FAC ¶ 18. This motion is directed to the second "event," which is premised on Plaintiff's alleged "opposition" using certain data that he claims was misappropriated from EOG Resources. *Id.* ¶ 63.

According to the First Amended Complaint, Plaintiff "overheard engineer Jeff Lo and Derek Rice (Executive VP of Exploration) discuss data which Lo obtained from his previous employer (EOG Resources)." *Id.* ¶ 46. Plaintiff claims that he "reported the incident to [Tunde] Ajayi," who was his supervisor. *Id.* ¶ 51. At that time, however, Rice "already knew of the theft[.]" *Id.* ¶ 52. Thereafter, Plaintiff alleges that he "told his staff that he opposed using the data[,]" "documented his opposition to the use of the data in the emails to Mr. Ajayi and others; and [] documented his opposition in Rice's online data repository 'salesforce' which is read by

---

[2] Plaintiff's Dodd-Frank claim is premised on the same alleged protected activity as his SOX claim. *See* FAC ¶ 92(b). Thus, in addition to dismissing Plaintiff's Dodd-Frank claim because he was not a "whistleblower" as defined by Dodd-Frank, this Court should dismiss the Dodd-Frank claim based on the foregoing analysis, which applies to both SOX and Dodd-Frank claims.

2

Toby Rice and others in management." *Id.* ¶ 57 (b)-(d). Although there is no suggestion that he said so at the time, Plaintiff now asserts that "the failure to disclose the illegal nature of [Rice's] revenue [was] a securities violation." *Id.* ¶ 60.

Even accepting all of these allegations as true, Plaintiff has not alleged that he was blowing the whistle at the time about conduct that he believed constituted a securities violation. Rather, the allegations show, at most, that Plaintiff was airing his disagreement about the alleged use of the EOG data, which is not protected under SOX. Indeed, as the Complaint itself makes clear, Rice **already knew** about the alleged incident, which further undermines Plaintiff's claim that he was blowing the whistle on alleged securities violations. His *post hoc* attempt to recast the nature of his alleged communications to Rice should be rejected. Because Plaintiff has not sufficiently alleged that his communications related to EOG resources (i.e., paragraphs 41 through 66) amount to protected activity – let alone that any of the relevant decisionmakers knew of his alleged protected activity – this aspect of Plaintiff's SOX claim should be dismissed.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court "must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. ARGUMENT

### A. Plaintiff's Dodd-Frank Claim Fails Because Plaintiff Was Not a "Whistleblower" When He Was Terminated.

Enacted after the 2008 financial crisis, Dodd-Frank "established 'a new, robust whistleblower program designed to motivate people who know of securities law violations to tell the SEC.'" *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 773 (2018). The Act defines a "whistleblower" as "any individual who provides… information relating to a violation of the securities laws **to the Commission**, in a manner established, by rule or regulation, by the Commission." 18 U.S.C. § 78u-6(a)(6) (emphasis added). This definition of "whistleblower" applies "throughout § 78u-6.'" *Digital Realty Trust*, 138 S. Ct. at 774.

As the Supreme Court recently explained in *Digital Realty Trust*, Dodd-Frank "affords **covered whistleblowers** both incentives and protection." *Id.* (emphasis added) "First, the section creates an award program for 'whistleblowers who voluntarily provid[e] original information to the Commission that le[ads] to the successful enforcement of [a] covered judicial or administrative action.'" *Id.* (quoting 18 U.S.C. § 78u–6(b)(1)). Second, it bars an employer from discharging, demoting, suspending, threatening, harassing, or otherwise discriminating against a "**whistleblower**": (1) "in providing information to the Commission in accordance with [§ 78u-6];" (2) "in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information;" and (3) "in making disclosures that are required or protected under" SOX, the Securities Exchange Act of 1934, the criminal anti-retaliation prohibition at 18 U.S.C. § 1513(e), or "any other law, rule, or regulation subject to the jurisdiction of the Commission." 15 U.S.C. § 78u-6(h)(1)(A)(i)-(iii) (the "anti-retaliation provision").

4

"Dodd-Frank's text and purpose leave no doubt that the term 'whistleblower' in [the anti-retaliation provision] carries the meaning set forth in the section's definitional provision." *Digital Realty Trust*, 138 S. Ct. at 778. Thus, as the Supreme Court recently made clear, to come within Dodd-Frank's protection, an individual must report the alleged violation to the SEC "**before his termination**," so that he is a whistleblower "**at the time of the alleged retaliation**." *Id.* (emphasis added). Otherwise, he is cannot "seek relief under § 78u–6(h)." *Id.*

*Digital Realty Trust* compels the conclusion that Plaintiff was not a "whistleblower" under Dodd-Frank because he did not report anything to the SEC **before** his termination. To be sure, he alleges that he provided information to the SEC **after** his termination.³ FAC ¶ 88(d)(i)-(iii). But, as the District Court for the District of New Jersey recently recognized, that is not enough to come within Dodd-Frank's protection:

> As the Supreme Court made clear, the purpose of Dodd–Frank whistleblower protections is to incentivize individuals like Plaintiff to come forward and provide information of securities law violations to the SEC. Here, Plaintiff did not come forward until well after the fact of the alleged securities violations . . . . Plaintiff had ample time between when he first learned of the violations and his termination to report the misconduct to the SEC, but he chose not to. The Court, therefore, finds that Plaintiff does not meet the definition of "whistleblower" under Dodd–Frank.

*Price v. UBS Fin. Servs., Inc.*, 2018 WL 1885669, at *2 (D.N.J. Apr. 19, 2018) (citations omitted).⁴

---

³ Plaintiff also alleges that he "caused information to be provided to the SEC . . . by filing his SOX complaint with the United States Department of Labor within 180 days of his termination." FAC ¶ 88(d)(iv). Not only did this report not predate Plaintiff's termination, but it wasn't even made to the SEC. Thus, it cannot support his claim that he was a Dodd-Frank whistleblower.

⁴ *See also, e.g.*, *Verble v. Morgan Stanley Smith Barney, LLC*, 148 F. Supp. 3d 644, 651 (E.D. Tenn. 2015), *aff'd*, 676 F. App'x 421 (6th Cir. 2017) (dismissing claim where the plaintiff complained to the SEC three months after his termination since he "did not qualify as a whistleblower at the time he was terminated"); *Lamb v. Rockwell Automation Inc.*, 2016 WL 4273210, at *4 (E.D. Wis. Aug. 12, 2016) (dismissing the plaintiff's claim since an employer "is only prohibited from retaliating against a 'whistleblower' – one who has reported to

Any other interpretation would gut the Supreme Court's holding in *Digital Realty Trust* and render the "tell the SEC" requirement meaningless. An individual could wait to make a report to the SEC until after he files suit – which could be as long as six years after his termination, 15 U.S.C. § 78u-6(h)(1)(B)(iii)(I)(aa) – and still gain the benefits of the Act like recovery of double back pay. *See* 15 U.S.C. § 78u-6(h)(1)(C)(ii). By that time, though, the individual would have no legitimate fear "of committing 'career suicide'" by blowing the whistle – and no need for protection from retaliation – because he would no longer be employed by the alleged retaliator. *See* S. Rep. No. 111-176, at 111.

When Congress passed a statute designed to "encourage certain employees, fearful of employer retaliation, to come forward with evidence of wrongdoing," it could not have intended to extend whistleblower protection to a scenario in which all fear of retaliation has vanished. *Digital Realty Trust*, 138 S. Ct. at 778. Therefore, Plaintiff's Dodd-Frank claim should be dismissed with prejudice because he was not a "whistleblower" entitled to protection.

### B. Plaintiff's Allegations Related to EOG Resources Fail to State a Claim Under SOX.

SOX prohibits publicly traded companies from retaliating against an employee who "provide[s] information [to], cause[s] information to be provided [to], or otherwise assist[s] in an investigation regarding conduct which the employee reasonably believes constitutes" mail, wire, bank, or securities and commodities fraud; any rule or regulation of the SEC; or any provision of Federal law relating to fraud against shareholders. 18 U.S.C. § 1514A. To state a *prima facie* case, a plaintiff must allege that he "(1) 'engaged in a protected activity;' (2) '[t]he [employer] knew or suspected that [he] engaged in the protected activity;' (3) '[he] suffered an adverse

---

the SEC – and at the time [the employer] allegedly retaliated, [the plaintiff] was not one" because she did not report to the SEC until two months later).

6

action;' and (4) '[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action.'" *Wiest v. Lynch*, 710 F.3d 121, 129 (3d Cir. 2013) (quoting 29 C.F.R. § 1980.104(e)(2)(i)-(iv)).

Plaintiff fails to sufficiently allege at least two of these elements. First, Plaintiff's alleged communications – his "opposition" to the alleged use of the EOG Resources data – does not amount to protected activity. Second, even if the communications are protected, Plaintiff's allegations do not show that the relevant decisionmakers knew about the protected activity.

        **1.**        **Plaintiff fails to allege that his opposition to the alleged handling of data from EOG Resources was related to a securities violation.**

To satisfy the protected activity prong, "an employee must establish not only a subjective, good faith belief that his or her employer violated a provision listed in SOX, but also that his or her belief was objectively reasonable." *Wiest*, 710 F.3d at 132. "A belief is objectively reasonable when a reasonable person with the same training and experience as the employee would believe that the conduct implicated in the employee's communication could rise to the level of a violation of one of the enumerated provisions in Section 806." *Id.*

To allow a court to evaluate whether communications are protected, the complaint must "specify… the nature or content of [the] communications." *Id.* at 137. Although the "communication need not ring the bell on each element of one of the stated provisions" in Section 806, it must at least "'relate in an understandable way to one of the stated provisions'" (mail, wire, bank, or securities and commodities fraud; an SEC rule; or a provision of Federal law relating to fraud against shareholders). *Id.* at 134 (quoting *id.* at 139 (Jordan, J., dissenting)). Otherwise, the recipient of the communication would have no way to "'know or suspect that the whistleblower-plaintiff is engaged in protected conduct[.]'" *Id.* (quoting *id.* at 139 (Jordan, J., dissenting)).

Thus, "[t]he relevant inquiry is what was **actually communicated** to the employer prior to the alleged retaliation." *Mara v. Sempra Energy Trading*, 2009 WL 6470478, at *13 (U.S. Dep't of Labor SAROX) (emphasis added). A plaintiff cannot re-characterize his communications about matters unrelated to securities violations after the fact in hopes of stating a SOX claim. *See Verfuerth v. Orion Energy Sys., Inc.*, 879 F.3d 789, 793 (7th Cir. 2018).

Applying this standard, the Department of Labor Administrative Review Board ("ARB") has found that "[c]omplaints to management about executive decisions and corporate expenditures with which a complainant disagrees are not protected activity[.]" *Robinson v. Morgan Stanley et al.*, 2010 WL 348303, at *8 (U.S. Dep't of Labor SAROX). Likewise, claiming that a company has engaged in conduct that might "expos[e] the company to extreme financial risk and thus constitute[] potential shareholder fraud…, is insufficient as a matter of law to make out a claim under § 1514A." *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 223 (2d Cir. 2014) (cleaned up).

The Seventh Circuit's decision in *Verfuerth* is particularly instructive on these points. 879 F.3d at 789. The plaintiff in *Verfuerth* was a CEO who raised "concerns about a hodgepodge of matters" to his company's board – many of which were already known to the board – including "potential patent infringement by one of [the company's] products" and "conflicts of interests involving a member of the board and a company executive." *Id.* at 791. The problem for the plaintiff was "that the practices about which he complained … [were] not 'fraud'[.]" *Id.* at 793. So he tried "to cure this obvious defect by artfully attempting to recharacterize his disputes" – alleging that he wasn't only "complaining about the board's managerial decisions, but rather was (implicitly) telling board members that their failure to disclose his grievances to [the company's] shareholders amounted to securities fraud." *Id.* at 793-94.

8

The Seventh Circuit was not persuaded. The plaintiff's "theory stretche[d] the language and purpose of Sarbanes-Oxley beyond what the statute can bear," the court concluded, because someone "who advises board members to disclose a fact that the board already knows about has not 'provide[d] information' about fraud[.]" *Id.* at 794. "At most," the court explained, the plaintiff "provided an opinion." *Id.* But SOX does not bar "a company from firing its executives over differences of opinion." *Id.* By contrast, the court observed that the plaintiff "could have qualified as a whistleblower if, for example, he informed the SEC that [the company's] past filings contained material omissions, and if he were objectively reasonable in thinking that those omissions were material." *Id.* The court made clear, however, that "a person does not become a whistleblower just by advising his colleagues about their own disclosure obligations[.]" *Id.*

In another case that is highly instructive here, the ARB similarly made clear that "[s]peculation or a mere possibility that shareholders would be defrauded … does not satisfy the reasonable belief requirement." *Reed v. MCI, Inc.*, 2008 WL 7835840 (U.S. Dep't of Labor SAROX). The claimant in *Reed* was a software engineer who claimed he was fired because he refused to use stolen software in his work. *Id.* at *3. In his SOX complaint, he alleged "that MCI's profit reports to its shareholders were based partly on its use of stolen software, and thus it defrauded shareholders." *Id.* The ARB properly rejected this argument. *Id.* "[E]ven if MCI did force Reed to use stolen software," the ARB explained, "Reed only speculates that MCI's profits were at least partly based on using such software and that fines and loss of good will would result, thus affecting shareholders." *Id.* In the ARB's view, speculation about the potential effect on shareholders was not enough to state a claim under SOX. *Id.*

This Court should reach that same conclusion and dismiss Plaintiff's SOX claim insofar as it is based on his alleged communications about EOG. Plaintiff claims that he "opposed" the

9

use of the data and voiced his opposition to "his staff," "in the emails Ajayi and others," and on Salesforce (Rice's internal data repository). FAC ¶ 57. Under no reasonable interpretation, however, could these communications amount to protected activity under SOX.

For starters, "opposing" the alleged use of the data does not amount to "**provid[ing] information**… regarding any conduct" that Plaintiff believed constituted a violation of one of the sections listed in 18 U.S.C. § 1514A. In fact, according to the First Amended Complaint, "Rice Energy already knew of the theft[.]" FAC ¶ 50. Thus, just as in *Verfuerth*, Plaintiff was not blowing any whistles. He was just voicing his opposition to his superiors, which is not protected under SOX. *See Wiest*, 710 F.3d at 137 (raising questions is not whistleblowing); *Verfuerth*, 2016 WL 4507317, at *6 ("airing concerns is not whistleblowing"). Indeed, there are no allegations in the First Amendment Complaint that could even suggest that Plaintiff believed, **at the time**, that Rice was committing a securities violation in connection with the alleged handling of the EOG Resources data.

More importantly, Plaintiff has not sufficiently pled that he reasonably believed the conduct he allegedly opposed – the alleged misappropriation of data – amounted to a violation of one of the provisions listed in Section 806. Contrary to Plaintiff's contentions, "[t]heft of trade secrets and inducement of others to share such secrets, even if it may be unlawful, is not *per se* fraudulent or deceptive." *Fuqua v. SVOX AG*, 2014 WL 3811047, at *7 (N.D. Ill. Aug. 1, 2014). Item 103 of Regulation S-K only requires a publicly traded company to report "any material **pending** legal proceedings" to shareholders. 17 C.F.R. § 229.103 (emphasis added). There is no suggestion in the First Amended Complaint that litigation was a possibility, let alone pending. Nor does Plaintiff allege that litigation was "substantially certain to occur," in which case it

could also be subject to disclosure. *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004).

Plaintiff's citation to the list of "Risk Factors" identified in Rice's 10-K statement likewise does nothing to support his claim. *See* FAC ¶ 42. Item 503 of Regulation S-K requires a registrant, "[w]here appropriate, [to] provide under the caption 'Risk Factors' a discussion of the **most significant factors** that make the offering speculative or risky." 17 C.F.R. § 229.503(c) (emphasis added). The discussion must "describe the most significant factors that may adversely affect the issuer's business . . . or its future financial performance." *In re WorldCom, Inc. Secs. Litig.*, 346 F.Supp.2d 628, 690 (S.D.N.Y. 2004). It is not reasonable for someone with Plaintiff's "SOX training" to believe that the conduct Plaintiff "opposed" was among the "most significant factors" of which Rice's shareholders should have been notified.

Distilled to its essence, then, Plaintiff's claim is that Rice had "to disclose the illegal nature of its revenue in its stock prospectus." FAC ¶ 60. But the law simply "do[es] not require a company to accuse itself of wrongdoing" in its SEC filings. *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004). Plaintiff has not shown in his Amended Complaint how or why it would have been reasonable for him – someone who claims he had "SOX training" – to believe otherwise. Thus, Plaintiff's SOX claim should be dismissed insofar as it is based on the allegations related to EOG Resources (i.e., paragraphs 41 through 66).

> **2. Plaintiff fails to allege facts showing that any decisionmaker knew Plaintiff's alleged opposition to use of EOG data was Plaintiff blowing the whistle on a securities violation or fraud.**

To state a SOX retaliation claim, it is not enough to allege "knowledge of the protected activity on the part of certain higher-ups who may or may not have been involved in the adverse action." *Wiest v. Lynch*, 15 F. Supp. 3d 543, 566 (E.D. Pa. 2014). "Allegations are less adequate

11

still when they name individuals who both may or may not have had knowledge and may or may not have had a decisionmaking role." *Id.* The plaintiff must instead allege facts to show that the "management officials **involved in or responsible for [the plaintiff's] termination** were aware of… his alleged protected activity[.]'" *Id.* (emphasis added).

Plaintiff cannot meet this standard. While Plaintiff claims that he "reported the incident to Mr. Ajayi," FAC ¶ 51. it is clear from the First Amended Complaint that Ajayi was **not** involved in terminating Plaintiff. In fact, according to the First Amended Complaint, Ajayi was terminated the same day as Plaintiff. FAC ¶ 38(g) (alleging that Plaintiff "was terminated within 30 minutes of Mr. Ajayi being terminated).

Plaintiff also attempts to impute knowledge of his "opposition" to other Rice employees. *See* FAC ¶ 58. Each of these efforts fails. Plaintiff first claims that "[h]is opposition was well known among the management and staff[.]" *Id.* But he cannot show that Rice knew of his alleged communication simply by saying that it was well known. That argument is completely tautological.

His remaining allegations – Rice should have known because it should have uncovered his emails to Ajayi during its alleged investigation surrounding SCS and because Toby Rice reads Salesforce, where he allegedly documented his "opposition" – are entirely speculative. *See* Compl. ¶ 58(b)-(c). So the Court need not credit them in deciding whether he states a claim. *Twombly*, 550 U.S. at 556. In sum, then, even if "opposing" the use of the data amounted to "providing information" about a perceived securities violation (it does not), Plaintiff has not stated a claim under SOX with respect to his allegations related to EOG Resources (i.e., paragraphs 41 through 66). This aspect of the First Amended Complaint should be dismissed.

12

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Rice's partial motion to dismiss and dismiss Plaintiff's Dodd-Frank claim in its entirety and Plaintiff's SOX claim insofar as it is based on the allegations related to EOG Resources (i.e., paragraphs 41 through 66).

Date: May 21, 2018

Respectfully submitted,

*s/ Jaime S. Tuite*
Jaime S. Tuite (PA 87566)
jaime.tuite@bipc.com
Ryan J. Wilk (PA 316696)
ryan.wilk@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219-1410
Telephone:  412-562-8800
Fax:  412-562-1041

*Attorneys for Defendant, Rice Energy Inc. a.k.a. EQT RE LLC*