# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEVIN WUTHERICH,

        Plaintiff,

    v.

RICE ENERGY INC., a.k.a EQT RE LLC,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:18-cv-00200

Judge Cathy Bissoon
Magistrate Judge Maureen P. Kelly

ELECTRONICALLY FILED

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Filed on behalf of Defendant,
RICE ENERGY INC., a.k.a EQT RE LLC

Counsel for this party:

Jaime S. Tuite (PA 87566)
jaime.tuite@bipc.com
Ryan J. Wilk (PA 316696)
ryan.wilk@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Phone: 412-562-8800
Fax: 412-562-1041

# TABLE OF CONTENTS

I.   FACTUAL BACKGROUND ................................................................................................3

II.  LEGAL STANDARD ....................................................................................................3

III. ARGUMENT ...............................................................................................................3

    A.   Plaintiff's SOX Claim Fails Because Plaintiff Cannot Establish a Prima
        Facie Case and Rice Would Have Terminated His Employment Absent
        Any Alleged Protected Activity ...........................................................................3

        1.   Plaintiff Cannot Establish a Prima Facie Case under SOX. ........................4

                a.   Plaintiff did not engage in protected activity. ..................................4

                        i.   Plaintiff's "report" to Ajayi about the alleged
                                misappropriation of data and "opposition" to the
                                alleged use of that data is not protected activity. ............... 6

                        ii.  Plaintiff's disagreement with the use of SCS as a
                                service provider is not protected activity. ........................... 9

                b.   Plaintiff failed to show that the decision maker knew or
                     should have known of any alleged protected activity. ...................11

                        i.   Plaintiff only communicated vague comments about
                                  Lo and EOG to Ajayi, about which he doesn't even
                                recall the specifics. ........................................................... 12

                        ii.  Plaintiff's technical opposition to "science
                                experiments" did not convey a reasonable belief of
                                a SOX violation. ................................................................ 13

                        iii. Plaintiff's disagreement about using SCS was not
                                  conveyed as a SOX violation. ............................................ 13

                        iv.  The decision maker, Daniel Rice, was not aware of
                                  any of these alleged communications. ............................... 14

                c.   Plaintiff's alleged protected activity had nothing to do with
                     his termination. ..............................................................................15

         2.   Rice Has Shown That It Would Have Terminated Plaintiff
             Regardless of His Alleged Protected Activity. .........................................18

    B.   Plaintiff's Age and National Origin Discrimination Claims Fail Because
        Plaintiff Cannot Establish Pretext. ......................................................................19

         1.   Rice Has Articulated a Legitimate, Non-Discriminatory Reason.............20

         2.   Plaintiff Cannot Establish Pretext. .........................................................20

IV.  CONCLUSION ...........................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul-Latif v. County of Lancaster*,
    990 F. Supp. 2d 517 (E.D. Pa. 2014) ....................................................................22

*Abels v. DISH Network Services, LLC*,
    507 F. App'x 179 (3d Cir. 2012) ...............................................................18, 19

*Barrick v. PNGI Charles Town Gaming, LLC*,
    365 F. Supp. 3d 672 (N.D. W. Va. 2019) ..................................................10

*Berckeley Investment Group, Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006)........................................................................3

*In re Citigroup, Inc. Securities Litigation*,
    330 F. Supp. 2d 367 (S.D.N.Y. 2004).......................................................7, 8

*Dellapenna v. Tredyffrin/Easttown School District*,
    449 F. App'x 209 (3d Cir. 2011) ................................................................19

*Dodson v. Coatesville Hosp. Corp.*,
    773 F. App'x 78 (3d Cir. 2019) ............................................................19, 20

*Feldman v. Law Enforcement Associations Corp.*,
    752 F.3d 339 (4th Cir. 2014) .................................................................15, 18

*Finn v. Porter's Pharmacy*,
    2015 WL 5098657, 2015 U.S. Dist. LEXIS 115360 (W.D. Pa. Aug. 31, 2015)....................19

*Flaig v. Aladdin Food Management Services, LLC*,
    2012 WL 5288716, 2012 U.S. Dist. LEXIS 152013 (W.D. Pa. Oct. 23, 2012) .....................16

*Fraser v. Fiduciary Trust Co. Int'l*,
    2009 WL 2601389, 2009 U.S. Dist. LEXIS 75565 (S.D.N.Y. Aug. 25, 2009)......................16

*Fuentes v. Perskie*,
    32 F.3d 759 (3d Cir. 1994)........................................................................20, 21

*Fuqua v. SVOX AG*,
    2014 WL 3811047, 2014 U.S. Dist. LEXIS 105090 (N.D. Ill. Aug. 1, 2014) .........................6

*Gibney v. Evolution Marketing Research, LLC*,
    25 F. Supp. 3d 741 (E.D. Pa. 2014) .........................................................4, 5

*Hemphill v. Celanese Corp.*,
    430 F. App'x 341 (5th Cir. 2011) ......................................................................18

*Hoptman v. Health Net of California*,
    ALJ No. 2017-SOX-13 (U.S. Dep't of Labor ALJ June 7, 2017) ...........................13

*Horton v. Deparptment of Navy*,
    66 F.3d 279 (Fed. Cir. 1995)................................................................................9

*Innella v. Lenape Valley Foundation*,
    2014 WL 3109973, 2014 U.S. Dist. LEXIS 92226 (E.D. Pa. July 08, 2014) .................21, 22

*Kautz v. Met-Pro Corporation*,
    412 F.3d 463 (3d Cir. 2005)................................................................................19

*Kuduk v. BNSF Railway Co.*,
    768 F.3d 786 (8th Cir. 2014) ..............................................................................14

*Lawson v. FMR LLC*,
    571 U.S. 429 (2014)............................................................................................5

*Livingston v. Wyeth, Inc.*,
    520 F.3d 344 (4th Cir. 2008) ...............................................................................5

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)............................................................................................3

*McCullers v. Napolitano*,
    427 F. App'x 190 (3d Cir. 2011) .........................................................................22

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)..........................................................................................20

*Nielsen v. AECOM Technology Corp.*,
    762 F.3d 214 (2d Cir. 2014).............................................................................6, 11

*Northrop Grumman System Corp. v. DOL*,
    927 F.3d 226 (4th Cir. 2019) ...............................................................................5

*Reed v. MCI, Inc.*,
    2008 WL 7835840 (U.S. Dep't of Labor Apr. 30, 2008) ....................................5, 8

*Riddle v. First Tenn. Bank, N.A.*,
    497 F. App'x 588 (6th Cir. 2012) ........................................................................18

*Robinson v. Morgan Stanley et al.*,
    2010 WL 348303 (U.S. Dep't of Labor Jan. 1, 2010) ...........................................5

*Rudolph v. National Railroad Passenger Corp.*,
    2013 DOL Ad. Rev. Bd. LEXIS 25, 2013 WL 1385560, at *9 (U.S. Dep't of
    Labor Mar. 29, 2013) .......................................................................................14, 15

*Safarian v. Am. DG Energy Inc.*,
    2014 WL 1744989, 2014 U.S. Dist. LEXIS 59684 (D.N.J. Apr. 29, 2014) ............................4

*Simpson v. Kay Jewelers*,
    142 F.3d 639 (3d Cir. 1998)...........................................................................................21

*Verfuerth v. Orion Energy Systems*,
    879 F.3d 789 (7th Cir. 2018) .........................................................................................8, 14

*Verfuerth v. Orion Energy Systems Inc.*,
    2016 WL 4507317, 2016 U.S. Dist. LEXIS 114751 (E.D. Wis. 2016)..............................9, 11

*Wiest v. Lynch*,
    710 F.3d 121 (3d Cir. 2013)......................................................................................4, 5, 12

*Wiest v. Tyco Electronics Corp.*,
    812 F.3d 319 (3d Cir. 2016)....................................................................................3, 15, 18

*Wilcher v. Postmaster General*,
    441 F. App'x 879 (3d Cir. 2011) ...................................................................................22

*Williams v. Philadelphia Housing Authority Police Department*,
    380 F.3d 751 (3d Cir. 2004)...........................................................................................16

*Willis v. UPMC Children's Hospital of Pittsburgh*,
    808 F.3d 638 (3d Cir. 2015).......................................................................................19, 20

*In re WorldCom, Inc. Securities Litigation*,
    346 F. Supp. 2d 628 (S.D.N.Y. 2004)............................................................................7

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................................................3

**Statutes**

43 P. S. § 951 ...................................................................................................................2

18 U.S.C. § 1514A..................................................................................................... *passim*

18 U.S.C. § 1514A(a)(1).......................................................................................................4

29 U.S.C. § 621....................................................................................................................1

## Other Authorities

17 C.F.R. § 229.103 ......................................................................................7

17 C.F.R. § 229.503(c) ..................................................................................7

29 C.F.R. § 1980.102(a)(1) ...........................................................................4

29 C.F.R. § 1980.104(e)(2)(i)-(iv) ...............................................................4

29 C.F.R. § 1980.109(b) ...........................................................................4, 17

S. Rep. No. 107-146 (2002) ..........................................................................5

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEVIN WUTHERICH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-00200 |
| | ) | |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| RICE ENERGY INC., a.k.a. EQT RE LLC, | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| | ) | *Electronically Filed* |
| Defendant. | ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

The Court should grant summary judgment for Rice Energy Inc. ("Rice") on all of Plaintiff's remaining claims. Rice terminated Plaintiff's employment after an investigation revealed that, in his role as a Board Advisor for a company called Drill2Frac, Plaintiff was paid, in part, to contact other companies in the oil and gas industry and refer and discuss Rice's experience using Drill2Frac's services in order to drive business to Drill2Frac. While Plaintiff conveyed that he would be working as a Board Advisor to Drill2Frac, he never reported the full extent of his relationship. As Rice's CEO Daniel Rice viewed it, the investigation showed that Plaintiff was profiting by using Rice information. There is nothing in the record to cast doubt on Rice's rationale—because that is what happened. Plaintiff acknowledged as much after his termination in a letter to Rice appealing for his job back.

Plaintiff has instead attempted to spin his run-of-the-mill termination for conduct that Rice reasonably believed constituted a violation of its conflict-of-interest policies into a tale about alleged securities violations and age (41) and national origin discrimination (Canadian), asserting claims under the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A, Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment

Act, 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act, 43 P. S. § 951 *et seq.* His theory crumbles upon even cursory examination.

First, with respect to the SOX claim, Plaintiff alleges two so-called "whistleblowing events": one related to what he overheard a co-worker, Jeff Lo, say about the alleged misappropriation of data from Lo's former employer, EOG Resources, and the second related to a conflict of interest between his supervisor, Tunde Ajayi, and a company called Silver Creek Services ("SCS"). In neither case, however, did Plaintiff convey to anyone at Rice a reasonable belief that Rice was committing fraud or any type of securities violation, as required to show protected activity under SOX.

More to the point, Rice terminated Plaintiff's employment two to three months after both of these events, after conducting an investigation—led by someone who had no knowledge that Plaintiff had communicated anything to anyone about Lo and EOG or SCS—which negates any possible inference that his communications had anything to do with his termination. They did not. And Rice has clearly shown that it would have terminated Plaintiff regardless of what he claims to have said about Lo and SCS based on the findings of its investigation. Indeed, it terminated Plaintiff's supervisor, Ajayi, for essentially the same conduct (not disclosing a conflict) on the same day. Meanwhile, Rice did not terminate other employees who raised concerns about SCS—including the one whom Plaintiff considered the "most vocal"—which further undermines his claim that his termination related to any alleged communications about SCS. Thus, Rice is entitled to summary judgment as to Plaintiff's SOX claim.

Second, as for Plaintiff's claim that he was terminated because he is 41 years old and Canadian, he failed to adduce any evidence that either of these characteristics played any part in Rice's decision. Instead, Rice terminated him for a legitimate, non-discriminatory reason: its

investigation uncovered that, unbeknownst to Rice, he was receiving payment to refer other oil and gas providers to Drill2Frac.  And there is nothing in the record to establish pretext.  Thus Rice is entitled to summary judgment as to Plaintiff's age and national origin claims.

## I.      FACTUAL BACKGROUND

Rice incorporates the Joint Statement of Undisputed Facts ("JSUF") (ECF No. 71) and its Concise Statement of Material Facts ("CSMF") filed with this motion as if set forth herein.

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party has carried its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts" in question.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, "'summary judgment is essentially "put up or shut up" time for the non-moving party' who 'must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.'"  *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 330 (3d Cir. 2016) ("*Wiest II*") (quoting *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).  "[I]f the non-moving party has the burden of proof at trial, that party must set forth facts sufficient to establish the existence of an element essential to that party's case."  *Id.* (quoting *Berckeley Inv. Grp.*, 455 F.3d at 201).

## III.    ARGUMENT

### A.      Plaintiff's SOX Claim Fails Because Plaintiff Cannot Establish a Prima Facie Case and Rice Would Have Terminated His Employment Absent Any Alleged Protected Activity.

SOX prohibits retaliation against employees who "provide information, cause information to be provided, or otherwise assist in an investigation regarding conduct which the

employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the SEC, or any provision of Federal law relating to fraud against shareholders."  18 U.S.C. § 1514A(a)(1).  To be protected, the "information or assistance" must be "provided to or the investigation [must be] conducted by—(A) a Federal regulatory or law enforcement agency; (B) any Member of Congress or committee of Congress; or (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)."  *Id.* § 1514A(a)(1)(A)-(C); 29 C.F.R. § 1980.102(a)(1).

To make out a prima facie case, a plaintiff must show that he "(1) 'engaged in a protected activity;' (2) '[t]he [employer] knew or suspected that [he] engaged in the protected activity;' (3) '[he] suffered an adverse action;' and (4) '[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action.'" *Wiest v. Lynch*, 710 F.3d 121, 129 (3d Cir. 2013) ("*Wiest I*") (quoting 29 C.F.R. § 1980.104(e)(2)(i)-(iv)). If a plaintiff establishes a prima facie case, the defendant may still prevail by showing "by clear and convincing evidence that it would have taken the same action" despite any protected activity. 29 C.F.R. § 1980.109(b).

### 1.     Plaintiff Cannot Establish a Prima Facie Case under SOX.

### a.     Plaintiff did not engage in protected activity.

SOX is not a "general anti-retaliation statute."  *Gibney v. Evolution Mktg. Research, LLC*, 25 F. Supp. 3d 741, 748 (E.D. Pa. 2014) (quoting *Safarian v. Am. DG Energy Inc.*, 2014 WL 1744989, 2014 U.S. Dist. LEXIS 59684, at *14 (D.N.J. Apr. 29, 2014)).  It was not intended "to encompass every situation in which any party takes an action that has some attenuated, negative effect on the revenue of a publicly-traded company, and by extension decreases the value of a shareholder's investment."  *Id*.  Nor was SOX intended to allow a "retaliation suit for an

employee's complaints about administrative missteps or inadvertent omissions from filing statements." *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 351 n.1 (4th Cir. 2008).

Instead, all six of the categories listed in the anti-retaliation provision "relate to fraud." *Northrop Grumman Sys. Corp. v. DOL*, 927 F.3d 226, 229 (4th Cir. 2019) (citing *Livingston*, 520 F.3d at 351 n.1). "Congress installed whistleblower protection [SOX] as one means to ward off another Enron debacle." *Lawson v. FMR LLC*, 571 U.S. 429, 447 (2014) (citing S. Rep. No. 107-146, at 2–11 (2002)). So "the specific shareholder fraud contemplated by SOX is that in which a public company . . . makes material misrepresentations about its financial picture in order to deceive its shareholders." *Gibney*, 25 F. Supp. 3d at 748.

Under this standard, voicing concerns and disagreement about corporate decisions and expenditures or raising speculation that shareholders might be affected is not sufficient. *See, e.g.*, *Robinson v. Morgan Stanley et al.*, 2010 WL 348303, at *8 (U.S. Dep't of Labor Jan. 1, 2010) ("Complaints to management about executive decisions and corporate expenditures with which a complainant disagrees are not protected activity[.]"); *Reed v. MCI, Inc.*, 2008 WL 7835840 (U.S. Dep't of Labor Apr. 30, 2008) ("Speculation or a mere possibility that shareholders would be defrauded … does not satisfy the reasonable belief requirement."). Instead, "[t]o show that the communication is protected, the employee must have both a subjective and an objective belief that the conduct that is the subject of the communication relates to an existing or prospective violation of one of the federal laws referenced in § 806." *Wiest I*, 710 F.3d at 134. "A belief is objectively reasonable when a reasonable person with the same training and experience as the employee would believe that the conduct implicated in the employee's communication could rise to the level of a violation of one of the enumerated provisions in Section 806." *Id.* at 132.

Here, neither Plaintiff's communication to Ajayi about Lo and EOG, his "opposition" to the alleged use of the EOG data, or his "insinuation" about SCS—the details of which he cannot even recall—amounts to protected activity.

    *i.*  *Plaintiff's "report" to Ajayi about the alleged misappropriation of data and "opposition" to the alleged use of that data is not protected activity.*

Plaintiff cannot show that his communication related to Lo and EOG amounts to protected activity since he does not even "recall the specifics" about what he told Ajayi. CSMF ¶ 15. Rather, he recalls only that he told Ajayi—the only Rice employee with whom he discussed this issue—"that it's illegal, that it's a crime being committed" and something about "the Rice brothers throwing [Lo] under the bus." JSUF ¶¶ 33-34. However, the alleged "[t]heft of trade secrets and inducement of others to share such secrets, even if it may be unlawful, is not per se fraudulent or deceptive." *Fuqua v. SVOX AG*, 2014 WL 3811047, 2014 U.S. Dist. LEXIS 105090, *26 (N.D. Ill. Aug. 1, 2014).

In a post-hoc attempt to bring his communications within the purview of SOX, Plaintiff now claims that he "believed that the failure to disclose the illegal nature of its revenue to be a securities violation" and that Rice's alleged "use of the data was a substantial litigation risk because of the amount of money involved." Am. Compl. ¶¶ 59-60. Setting aside the fact that Plaintiff never framed his communications in this way *at the time*, this theory is not objectively reasonable. Instead, it rests instead on of a series of speculative inferential leaps—none of which is supported by the record or the law. As the Second Circuit has held, claiming that a company engaged in conduct that might "expos[e] the company to extreme financial risk and thus constitute[] potential shareholder fraud…, is insufficient as a matter of law to make out a claim under § 1514A." *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 223 (2d Cir. 2014) (cleaned up).

Item 103 of Regulation S-K only requires a publicly traded company to report "any material pending legal proceedings" to shareholders. 17 C.F.R. § 229.103. There is no suggestion that litigation was a possibility, let alone pending, at the time of his communications. Nor is there evidence that litigation was "substantially certain to occur," such that it should have been disclosed. *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004).

Plaintiff's citation to the list of "Risk Factors" identified in Rice's 10-K statement likewise does nothing to support his claim. *See* Am. Compl. ¶ 42. Item 503 of Regulation S-K requires a registrant "[w]here appropriate, [to] provide under the caption 'Risk Factors' a discussion of the most significant factors that make the offering speculative or risky." 17 C.F.R. § 229.503(c). The discussion must "describe the most significant factors that may adversely affect the issuer's business . . . or its future financial performance." *In re WorldCom, Inc. Secs. Litig.*, 346 F. Supp. 2d 628, 690 (S.D.N.Y. 2004). It is not reasonable to believe that the alleged conduct about which Plaintiff communicated was among the "most significant factors" of which Rice's shareholders should have been notified.

Indeed, Plaintiff's purported belief was based entirely on a rumor he had heard about another employee at his former employer. As he testified, he "told [Lo] [he] heard what he was talking about," and "remember[s] telling him that it was illegal" and that "he can go to jail for this based on [a] . . . rumor [Wutherich] heard at [his] previous employer, Schlumberger, where an employee left the company, stole data, and [Wutherich] was told [the employee] is serving jail time." JSUF ¶ 31.

Distilled to its essence, Plaintiff's claim is that Rice had "to disclose the illegal nature of its revenue in its stock prospectus." Am. Compl. ¶ 60. To accept this claim, however, the Court would have to connect Plaintiff's logical leaps, none of which has any basis in fact. For starters,

nothing in the record supports Plaintiff's assertions that the EOG data was confidential, that Rice

used the EOG data, that Rice obtained any "illegal revenue" as a result of the EOG data, or that

any litigation related to the EOG data was substantially certain to occur.  *See, e.g.*, *In re*

*Citigroup*, 330 F. Supp. 2d at 377 (dismissing fraud claim and finding the plaintiff's "allegation

that Citigroup's failure to disclose that its revenues were derived from 'unsustainable and

illegitimate sources' . . . unavailing").  Again, Plaintiff's purported belief that the alleged use of

this data could detrimentally affect Rice's shareholders was based on nothing more than a rumor

about something that occurred with his former employer.  Moreover, the standard for alleging an

omission of financial information is high and equates to **<u>fraud</u>**, which requires "an element of

manipulation or deception."  *Id.* at 375.  The law simply "do[es] not require a company to

accuse itself of wrongdoing" in its SEC filings, particularly where, as here, there is no

substantiated or legitimate basis for such an outlandish claim.  *Id.* at 377; *see also Verfuerth v.*

*Orion Energy Sys.*, 879 F.3d 789, 794 (7th Cir. 2018) ("The securities laws do not require

companies to notify shareholders about every managerial hiccup or internal policy

disagreement[.]").

The Department of Labor Administrative Review Board ("ARB") rejected a similar claim

in *Reed v. MCI, Inc.*, and its decision is instructive here.  The claimant in *Reed* was a software

engineer, allegedly fired because he refused to use stolen software in his work.  2008

WL 7835840, at *3.  In his SOX complaint, he "argued that MCI's profit reports to its

shareholders were based partly on its use of stolen software, and thus it defrauded shareholders."

*Id.*  He also claimed that "using stolen software could subject MCI to potentially huge fines and

loss of good will, both of which might cause significant damage to the value of the company and

thereby affect shareholders." *Id.* According to the claimant, this amounted to "stockholder fraud because it subjected the stockholders to 'significant potential losses.'" *Id.*

The ARB properly rejected this argument. *Id.* "[E]ven if MCI did force Reed to use stolen software, an allegation that [the claimant] has not supported with any evidence and that the company strongly denies," the ARB explained, "[he] only speculates that MCI's profits were at least partly based on using such software and that fines and loss of good will would result, thus affecting shareholders." *Id.* But, as the ARB concluded, this "[s]peculation or a mere possibility that shareholders would be defrauded because he used the software… does not satisfy the reasonable belief requirement." *Id.*

This Court should reach that same conclusion. Plaintiff's purported belief that Rice had somehow profited from Lo and the alleged EOG data is not supported by anything in the record. It is purely Plaintiff's speculation. There is likewise no evidence of **any** threats of litigation, imagined or otherwise, based on the situation involving Lo and EOG. Therefore, there was nothing to report to Rice shareholders. Plaintiff's purported belief to the contrary is not reasonable. Thus, his communications are not protected activity under SOX, and Rice is entitled to summary judgment.

ii.    *Plaintiff's disagreement with the use of SCS as a service provider is not protected activity.*

Plaintiff's communications about SCS amount to nothing more than an expression of disagreement with using SCS as a service provider—not conveying a reasonable belief of a violation of any of the enumerated provisions in § 806. There are several reasons why.

First, to the extent Plaintiff's claim is premised on his communications to Ajayi about using SCS as a provider, it fails because Ajayi was also the person about whom Plaintiff was allegedly blowing the whistle. CSMF ¶ 13. Telling a supervisor that he is engaged in fraud "is

not 'whistleblowing,' it is simply accusing that person of illegal activity." *Verfuerth v. Orion Energy Sys. Inc.*, 2016 WL 4507317, 2016 U.S. Dist. LEXIS 114751, at *3 (E.D. Wis. 2016); *see also Horton v. Dep't of Navy*, 66 F.3d 279, 282 (Fed. Cir. 1995) ("Criticism directed to the wrongdoers themselves is not normally viewable as whistleblowing.").

Second, while Plaintiff has gone to great lengths to transform his alleged concern about using SCS as a service provider into the provision of information about an alleged securities violation, there is no evidence that Plaintiff subjectively believed Rice was committing a securities violation at the time of his communications to Ajayi and Toby Rice. As one court has recognized, it would be "hard, if not impossible, for someone to hold a subjective belief of a violation if they have no understanding of the law." *Barrick v. PNGI Charles Town Gaming, LLC*, 365 F. Supp. 3d 672, 684 (N.D. W. Va. 2019). "That is not to say that Plaintiff needed to know the elements of fraud or an exact definition, but to have a belief, he should have, at the very least, a basic understanding." *Id.* Here, Plaintiff concedes that he has "no idea" what the criteria is for when something has to be disclosed in a 10-K. CSMF ¶ 38. Thus, he cannot establish that he even had a subjective belief that Rice was violating one of the listed provisions.

Moreover, as with his communication related to Lo and EOG, Plaintiff cannot even "recall the exact way [he] talked [about SCS]" during the meeting with Ajayi and Toby Rice. CSMF ¶ 29. Instead, he claims the his "body language" made it clear that he thought the reason SCS was selected as a service provider "was because of the relationship between Silver Creek and Tunde [Ajayi]." *Id.* However, it is undisputed that:

- Plaintiff did not tell Ajayi or Toby Rice that he thought it was illegal to be using SCS as a service provider (*Id.* ¶ 25);

- Plaintiff never told Toby Rice or Ajayi that he thought it was a securities violation to be using SCS as a service provider (*Id.* ¶ 30); and

- When he was employed by Rice, Plaintiff did not tell anyone that Ajayi's relationship with SCS needed to be disclosed in an SEC filing (*Id.* ¶ 31).

If anything, then, Plaintiff was just airing his concerns about using SCS as service provider. "[B]ut airing concerns is not whistleblowing." *Verfuerth*, 2016 WL 4507317, 2016 U.S. Dist. LEXIS 114751, at *22. Nor does it convey a reasonable belief that Rice was violating one of the provisions in § 806. The connection to fraud "is simply too tenuous." *Nielsen*, 762 F.3d at 223.

Plaintiff's claim related to SCS suffers from another fatal flaw: he does not dispute that Rice became aware that Ajayi owned 25% of SCS in 2014. JSUF ¶ 2014. And "multiple" Rice employees voiced disagreement over SCS. *Id.* ¶ 59. After Jenkins relayed the concerns to CEO Daniel Rice, General Counsel Will Jordan, and COO Toby Rice, they directed Ajayi to sell his shares. CSMF ¶ 34. Toby Rice was continually in contact with Ajayi about selling his shares, and Ajayi "was being pressured at some point." JSUF ¶ 65. Because Plaintiff was not reporting any information that Rice did not already know, he was not a whistleblower entitled to protection under SOX. *See Verfuerth*, 2016 WL 4507317, 2016 U.S. Dist. LEXIS 114751, at *24-25 (holding that the plaintiff's report about alleged stock manipulation involving a former employee was not whistleblowing because the information "was already well-known"). In his own words, Plaintiff was complaining that "bad business decisions were being made with regards to choosing of SCS as the provider instead of the better bids submitted by other providers." Am. Compl. ¶ 38(f). SOX does not protect these communications.

**b.** **Plaintiff failed to show that the decision maker knew or should have known of any alleged protected activity.**

Plaintiff's claim also fails because he lacks evidence that Rice knew or should have known of his alleged protected activity. "[F]or an employer to know or suspect that the whistleblower-plaintiff is engaged in protected conduct . . . the plaintiff's intra-corporate communications [must] relate in an understandable way to one of the stated provisions of federal

law [in § 806]." *Wiest I*, 710 F.3d at 134 (alterations in original). Here, Plaintiff's alleged communications fail to relate in *any* way to the provisions in § 806.

Before addressing those communications, it is important to understand that Rice operated a "whistleblower hotline" for raising SOX-related complaints. CSMF ¶ 8. Rice made employees aware of the hotline in its employee handbook; information was also posted on the external website and internal website. *Id.* ¶ 9. Rice also ran a one-page slide on the TVs posted throughout its office, which was created by Jenkins, directing employees, "if you see something, say something, call the whistleblower hotline if you have concerns." *Id.* ¶ 10. Tellingly, Wutherich never brought any complaints or concerns to Jenkins' attention through the whistleblower hotline. *Id.* ¶ 11. What he did is make vague statements and insinuations that had nothing to do with fraud or perceived violations of SEC rules or regulations.

> i.    *Plaintiff only communicated vague comments about Lo and EOG to Ajayi, about which he doesn't even recall the specifics.*

As Plaintiff admits, he does not "recall the specifics" about what he told Ajayi about Lo and the alleged EOG data, aside from saying something about how "it's illegal, that it's a crime being committed . . . ." JSUF ¶ 33. But Plaintiff never tied that alleged illegality to any of the provisions listed in § 806. So no one at Rice could have reasonably suspected that he was raising a potential securities issue. By itself, that should be fatal to Plaintiff's claim related to EOG. *See Wiest I*, 710 F.3d at 137 (finding that the plaintiff did not engage in protected activity when he "'raised questions' about proper accounting treatment of" certain events hosted by defendant, in part, because the "Complaint does not specify anything about the nature or content of his communications"). It is also apparent that Ajayi himself did not understand Plaintiff's communication to relate to SOX because Ajayi did not follow up or do anything with the information that Plaintiff provided. JSUF ¶¶ 35-36.

12

While Plaintiff claims that he also "opposed" certain "science experiments" that Rice conducted involving high-density clusters, he never publicly stated that his "opposition" related to the alleged EOG data; instead, he opposed the tests "publicly due to technical reasons." CSMF ¶ 8. That is, he "opposed" the tests because he thought high-density clustering was ineffective and could harm the well—not because the tests were allegedly based on the data from EOG. *Id.* ¶¶ 9-11. So again, no reasonable person could have understood his "opposition" to implicate any provision listed in § 806. *See, e.g.*, *Hoptman v. Health Net of Cal.*, ALJ No. 2017-SOX-13 (U.S. Dep't of Labor ALJ June 7, 2017), *available at* https://www.oalj.dol.gov/DECISIONS/ALJ/SOX/2017/HOPTMAN_DAVID_M_v_HEALTH_NET_OF_CALIFO_2017SOX00013_(JUN_07_2017)_140917_CADEC_SD.PDF (holding that "Complainant's 'hinting' at an online article and then mentioning an unspecified complaint is not within the scope of the 'good faith and reasonable reporting of fraud' envisioned by the statute" because "no reasonable person could find that Complainant's 'hinting' could lead [the defendant] to understand the seriousness related to an allegation of potential corporate fraud").

iii. *Plaintiff's disagreement about using SCS was not conveyed as a SOX violation.*

Likewise with respect to SCS, Plaintiff claims to have made two complaints about the RFQ process as it related to the selection of SCS as a service provider. CSMF ¶ 21. The first was to Ajayi and the second was during a presentation to Ajayi and Toby Rice. *Id.* ¶ 22. But Plaintiff "does not recall exactly what [he] told [Ajayi], other than a disagreement with the decision" to select SCS as a service provider. *Id.* ¶ 23. During his deposition, Wutherich agreed that it was fair to characterize his complaint to Ajayi to be that he did not think SCS should be the vendor that should be used. *Id.* ¶ 24.

Then at the meeting with Ajayi and Toby Rice about the RFQ process, Plaintiff just "insinuated that [SCS was selected] because of the relationship with Silver Creek" through his "body language." JSUF ¶ 57; CSMF ¶ 29. He never told Ajayi or Toby Rice he thought using SCS was a securities violation. CSMF ¶ 30. Nor did he tell anyone at Rice that he thought Ajayi's relationship with SCS needed to be disclosed in an SEC filing. *Id.* ¶ 31. Plaintiff was just analyzing the vendors for selection as part of the RFQ process. In fact, he actually did not think SCS was a bad vendor, and he agreed with the selection of SCS as a provider for certain services. *Id.* ¶¶ 26-27.

Thus, this case is nothing more than a post hoc attempt to re-characterize his alleged concern about using SCS as a service provider into the type of fraudulent conduct contemplated by § 806. Plaintiff now claims that he was really saying that Rice should have disclosed Ajayi's conflict with SCS to its shareholders, but he said absolutely no such thing at the time. The Court should not permit him to rewrite history in order to survive summary judgment. *See, e.g.*, *Verfuerth*, 879 F.3d at 793-94 (rejecting the plaintiff's efforts to "artfully recharacteriz[e]" his disputes with defendant's board of directors about internal disagreements—"attorney overbilling, intellectual property disputes, conflicts of interest, and violations of company protocol"—into complaints that the board's "failure to disclose his grievances to [the company's] shareholders amounted to securities fraud").

> iv.   *The decision maker, Daniel Rice, was not aware of any of these alleged communications.*

Even if Plaintiff's alleged communications somehow related to one of the provisions in § 806, it is not enough to show "that an employer, as an entity, was aware of the protected activity." *Rudolph v. Nat'l R.R. Passenger Corp.*, 2013 DOL Ad. Rev. Bd. LEXIS 25, 2013 WL 1385560, at *9 (U.S. Dep't of Labor Mar. 29, 2013). Likewise, a lower level supervisor's

knowledge is insufficient. *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 790-91 (8th Cir. 2014). An employee must show "that the decision-makers who subjected him to the alleged adverse action were aware of the protected activity." *Rudolph*, 2013 DOL Ad. Rev. Bd. LEXIS 25, at *31.

This is also fatal to Plaintiff's claim. It is undisputed that Daniel Rice made the decision to terminate Plaintiff's employment. JSUF ¶ 67. When he made that decision, he was not aware of Plaintiff having raised any concerns about SCS. CSMF ¶ 54. Nor was he aware that Plaintiff had reported anything about Lo or the alleged EOG data to Ajayi. *Id.* ¶ 55. In fact, it is not disputed that Ajayi—the only person to whom Plaintiff communicated about this alleged incident—did not convey what Plaintiff had reported to him to anyone else. JSUF ¶¶ 34-35, 37. And Plaintiff admits he has "no direct knowledge" how anyone besides Ajayi would have known about his communication to Ajayi about EOG. CSMF ¶ 16. Without such evidence, Plaintiff cannot establish a prima facie case, and Rice is entitled to summary judgment.

> **c.** **Plaintiff's alleged protected activity had nothing to do with his termination.**

There is likewise no evidence that Plaintiff's alleged protected activity was a "contributing factor" in Rice's decision to terminate his employment. A "contributing factor" is "'any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision.'" *Wiest II*, 812 F.3d at 330 (quoting *Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014)). Temporal proximity "is a significant factor" in deciding whether there is enough circumstantial evidence of causation to survive summary judgment. *Id.* (citations and quotation marks omitted). Conversely, "a causal connection may be severed by the passage of a significant amount of time, or by some other legitimate intervening event." *Id.* (cleaned up).

Plaintiff cannot meet this standard with respect to either alleged "whistleblowing" event. First, there is no temporal proximity between the alleged whistleblowing and Plaintiff's termination. Plaintiff's alleged report to Ajayi about Lo and EOG occurred in July 2016. CSMF ¶¶ 12, 14. His alleged report to Toby Rice and Ajayi about SCS occurred in early August 2016. JSUF ¶¶ 55-57. But Rice did not terminate his employment until more than two months after his communications about SCS and more than three months after his communication about Lo and EOG. *Id.* ¶ 68. Such a lengthy gap undercuts Plaintiff's theory of causation. *See Fraser v. Fiduciary Trust Co. Int'l*, 2009 WL 2601389, 2009 U.S. Dist. LEXIS 75565, at *17 (S.D.N.Y. Aug. 25, 2009) (explaining that courts "have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation") (citation and quotation marks omitted). "Although the Third Circuit has not stated an explicit period of time at which temporal proximity is no longer 'unduly suggestive,' it has held in the context of other anti-retaliation statutes that a period of two months is too long." *Flaig v. Aladdin Food Mgmt. Servs.*, *LLC*, 2012 WL 5288716, 2012 U.S. Dist. LEXIS 152013, at *13 (W.D. Pa. Oct. 23, 2012) (citing *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004)).

Second, there was a "legitimate intervening event" that led to Plaintiff's termination. In October of 2016, Toby Rice instructed all Rice employees to disclose any previously undisclosed conflicts of interest to Rice's Director of Internal Audit, Bruce Jenkins. CSMF ¶ 39. Rice then began to investigate Plaintiff after he emailed Jenkins and, for the first time, disclosed he was receiving a referral fee for clients that contracted with Drill2Frac. *Id.* ¶¶ 40-41. During the investigation, Jenkins discovered emails in which Plaintiff was contacting representatives of companies such as Consol and Range Resources about Drill2Frac. *Id.* ¶ 42. Jenkins also

discovered that Plaintiff had invented a frac plug and was developing a business plan to sell the plug back to Rice without disclosing this development to Rice, which Rice believed to be a violation of the terms of Plaintiff's offer letter. *Id.* ¶ 43. Throughout his investigation, Jenkins had no knowledge that Plaintiff had expressed any dissatisfaction about using SEC as a service provider or that Plaintiff had made any communications related to Jeff Lo and EOG. *Id.* ¶¶ 44-45. Neither Ajayi nor Toby Rice—the recipients of Plaintiff's alleged whistleblowing—ever said anything to Jenkins about Wutherich raising any complaints to them. *Id.* ¶¶ 46-47.

Jenkins conveyed his findings to the members of the Rice's executive team, including CEO Daniel Rice. *Id.* ¶ 49. Based on the results of Jenkins' investigation, CEO Daniel Rice concluded that Plaintiff "was abusing his role at Rice for his personal benefit, and [that] it was a clear violation of [Rice's] conflict [of interest policy]." *Id.* ¶ 50. More specifically, based on the review of Plaintiff's emails to representatives of other oil and gas companies, it was determined that Plaintiff was using proprietary Rice information and information related to Rice's trial of Drill2Frac and using it as a marketing tool to help sell Drill2Frac's product to competitors of Rice—and in return, Plaintiff was receiving compensation. *Id.* ¶ 51. In simple terms, as Daniel Rice viewed it, Plaintiff was profiting by taking Rice's information. *Id.* ¶ 52. Daniel Rice ultimately decided to terminate Plaintiff's employment. *Id.* ¶ 54. At the time, he had no knowledge that Plaintiff had made any complaints about SCS or Lo and EOG. *Id.* ¶ 55. These facts negate any possible inference of causation.

What's more, it is undisputed that other Rice employees raised concerns or voiced disagreement about SCS. JSUF ¶¶ 59-63. In fact, according to Plaintiff, Andrew Sorg was "[t]he most vocal] about SCS. JSUF ¶ 61. Yet Rice did not terminate Sorg's employment for raising those concerns, nor did he experience any adverse actions. CSMF ¶ 36. Another

member of the completions department, Adam Hughey, also made comments about SCS.  JSUF ¶ 62.  And Hughey was ultimately *promoted* to Director of Completions after Plaintiff's termination.  *Id.* ¶ 69; CSMF ¶ 37.  That other Rice employees raised concerns about SCS and were not terminated r belies Plaintiff's claim that he was terminated for allegedly complaining about SCS.  *See Wiest II*, 812 F.3d at 332 (finding no causation where the plaintiff's colleagues "who were as involved, or more involved, in the same activity, did not receive any negative treatment").  He was not.

> ### 2. Rice Has Shown That It Would Have Terminated Plaintiff Regardless of His Alleged Protected Activity.

Even if Wutherich could establish a factual dispute about whether his alleged protected activity was a contributing factor in his termination, Rice is still entitled to summary judgment because it has shown that it would have terminated Wutherich notwithstanding any alleged protected activity.  *See* 29 C.F.R. § 1980.109(b).  As the Third Circuit has stressed, it is not the court's "role to second-guess a human resources decision that followed a thorough investigation."  *Wiest II*, 812 F.3d at 333 (citing *Abels v. DISH Network Serv., LLC*, 507 F. App'x 179, 185 (3d Cir. 2012); *Feldman*, 752 F.3d at 350; *Riddle v. First Tenn. Bank, N.A.*, 497 F. App'x 588, 596 (6th Cir. 2012)).

That is exactly what occurred here.  Months after any alleged protected activity, Plaintiff disclosed to Jenkins the extent of his relationship with Drill2Frac and that he was being paid for referrals.  CSMF ¶ 40.  Jenkins—who had **no knowledge** of Plaintiff's alleged protected activity (CSMF ¶¶ 44-45)—investigated.  *See Wiest II*, 812 F.3d at 332 (finding it relevant that the person who conducted the investigation had no knowledge of the alleged protected activity); *Hemphill v. Celanese Corp.*, 430 F. App'x 341, 345 (5th Cir. 2011) (same).  And the investigation uncovered violations of Rice policy that, in the view of the decision maker, Daniel

Rice, warranted Plaintiff's termination. CSMF ¶¶ 50-52. Rice terminated Ajayi for essentially the same conduct—failing to disclose his financial relationship with another Rice service provider—on the same day, which confirms that Rice was not motivated by any alleged protected activity.

In sum, Plaintiff has failed to identify any evidence in the record to connect the investigation that led to his termination with his protected activity. He simply disagrees with Rice's decision to terminate his employment. But the Court does "not sit as a super-personnel department that reexamines an entity's business decisions." *Abels*, 507 F. App'x at 185. Because Rice has shown that it would have terminated Plaintiff's employment regardless of any alleged protected activity, it is entitled to summary judgment as to Plaintiff's SOX claim.

**B.      Plaintiff's Age and National Origin Discrimination Claims Fail Because Plaintiff Cannot Establish Pretext.[1]**

To establish a prima facie case of age discrimination, the plaintiff must show that: "(1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). Likewise, to establish a prima facie case of national origin discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for the position; (3) he was subject to an adverse employment action; and (4) that the circumstances give

---

[1] Plaintiff's age claims under the ADEA and PHRA are governed by the same standard. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005). The same standard also governs his Title VII and PHRA claims. *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 216 (3d Cir. 2011).

rise to an inference of unlawful discrimination. *Finn v. Porter's Pharmacy*, 2015 WL 5098657, 2015 U.S. Dist. LEXIS 115360, at *5 (W.D. Pa. Aug. 31, 2015)).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action, "which the plaintiff must then show was 'mere pretext' for unlawful discrimination." *Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 80 (3d Cir. 2019) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). For this motion only, Rice assumes that Plaintiff can establish a prima facie case. Nevertheless, Rice is entitled to summary judgment because it has established a legitimate, non-discriminatory reason, which Plaintiff cannot show is pretext for age or national origin discrimination.

### 1. Rice Has Articulated a Legitimate, Non-Discriminatory Reason.

As set forth above, Rice had a legitimate, non-discriminatory reason for terminating Plaintiff's employment: Jenkins' search of Plaintiff's email and hard drive revealed that he was contacting representatives of companies like Consol and Range about Drill2Frac. Thus, Daniel Rice, who made the decision to terminate Plaintiff, concluded that Plaintiff was abusing his role at Rice for his personal benefit by using proprietary Rice information related to Rice's trial of Drill2Frac to help sell Drill2Frac to Rice's competitors. *See* CSMF ¶ 50-52. Daniel Rice reasonably determined that this conduct violated Rice's conflict of interest policy because Plaintiff had not previously disclosed that he was being paid to refer potential customers to Drill2Frac. *Id.*

### 2. Plaintiff Cannot Establish Pretext.

The Third Circuit has recognized two ways a plaintiff can show pretext. *Willis*, 808 F.3d at 644. First, the plaintiff can "point to evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action." *Id.* at 644. To create "sufficient

disbelief, the evidence must indicate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).

Second, the plaintiff can present "evidence that would allow a factfinder to believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause' of the employer's action." *Id.* (quoting *Fuentes*, 32 F.3d at 765). "[T]he plaintiff can show pretext this way by presenting evidence 'with sufficient probative force' so as to allow the factfinder to 'conclude by a preponderance of the evidence that age was a motivating or determinative factor.'" *Id.* (quoting *Simpson v. Kay Jewelers*, 142 F.3d 639, 644-45 (3d Cir. 1998)). A plaintiff can point to the following types of evidence to support this theory: "(1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably." *Id.* (citing *Simpson*, 142 F.3d at 645).

Here, Plaintiff has done nothing to cast Rice's legitimate, non-discriminatory reason into doubt. Rice has consistently maintained the legitimate, non-discriminatory reason for Plaintiff's termination. At most, he believes that Rice made the wrong decision in terminating him, as evidenced in his post-termination letter taking issue with Rice's investigation and appealing for his position back. CSMF ¶ 56. It is not enough, however, to show that the "employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.

Nor can Plaintiff show that his age or national origin actually motivated Rice's decision. His attempt to create pretext by pointing to Michael Didier as a comparator is unavailing. *See* Am. Compl. ¶ 71(a) (alleging that "Michael Didier, was younger, and an American citizen"). For starters, "the Third Circuit has consistently held an age difference of less than four years, alone, does not support an inference of age discrimination." *Innella v. Lenape Valley Found.*, 2014 WL 3109973, 2014 U.S. Dist. LEXIS 92226, at *9 (E.D. Pa. July 08, 2014). Didier and Plaintiff are just about three years apart in age, which is not enough to create an inference of discrimination. CSMF ¶ 64.

Didier is also not similarly situated to Plaintiff. In making this assessment, the court must consider "factors such as the employee's job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). If employees "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them," they will be deemed 'similarly situated.'" *McCullers v. Napolitano*, 427 F. App'x 190, 195 (3d Cir. 2011) (quotation omitted). But if their conduct differed in a way that would be material to an employer, they are not "similarly situated." *See id.* "[S]ummary judgment is appropriate where there is no evidence from which a jury could conclude the parties were similarly situated." *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014).

Here, although Didier was a partial owner of SCS (and thus had a conflict), this conflict was fully known to Rice. JUSF ¶ 41; CSMF ¶ 65. Plaintiff, by contrast, did not disclose the full extent of his financial relationship with Drill2Frac until October 2016. CSMF ¶ 40. These different circumstances warranted the different treatment between Plaintiff and Didier. That Rice terminated Ajayi, who is younger than Plaintiff and not Canadian, on the same day—for the

same conduct—further belies any suggestion that Rice was motivated by Plaintiff's age or national origin.  *Id.*  ¶¶ 58-59 (Rice terminated Ajayi for failing disclose a relationship with another vendor).  So too does Rice's decision to hire another Canadian to replace Ajayi as Vice President of Completions after Ajayi's termination.  *Id.* ¶¶ 61-62.  Since Plaintiff cannot show pretext, Rice is entitled to summary judgment on Plaintiff's age and national origin claims.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant summary judgment in favor of Rice and against Plaintiff on all of his remaining claims.


Date: October 15, 2019

Respectfully submitted,

*/s/ Jaime S. Tuite*
Jaime S. Tuite (PA 87566)
jaime.tuite@bipc.com
Ryan J. Wilk (PA 316696)
ryan.wilk@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219-1410
Telephone:  412-562-8800
Fax:  412-562-1041

*Attorneys for Defendant, Rice Energy Inc.*
*a.k.a. EQT RE LLC*