## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN WUTHERICH, | ) | |
| | ) | No. 2:18-cv-00200 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | Magistrate Judge Maureen P. Kelly |
| RICE ENERGY INC., a.k.a. EQT RE | ) | |
| LLC, | ) | ELECTRONICALLY FILED |
| | ) | |
| Defendant. | ) | **DEFENDANT'S REPLY BRIEF IN** |
| | ) | **SUPPORT OF MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| | ) | |
| | ) | Filed on behalf of Defendant, |
| | ) | RICE ENERGY INC., a.k.a. EQT RE LLC |
| | ) | |
| | ) | Counsel for this party: |
| | ) | |
| | ) | Jaime S. Tuite (PA 87566) |
| | ) | jaime.tuite@bipc.com |
| | ) | Ryan J. Wilk (PA 316696) |
| | ) | ryan.wilk@bipc.com |
| | ) | BUCHANAN INGERSOLL & ROONEY PC |
| | ) | One Oxford Centre |
| | ) | 301 Grant Street, 20th Floor |
| | ) | Pittsburgh, PA  15219 |
| | ) | Phone:  412-562-8800 |
| | ) | Fax:      412-562-1041 |

## <u>TABLE OF CONTENTS</u>

A.   Plaintiff's Testimony Shows He Did Not Engage in Protected Activity............................1

B.   The Decision Maker Lacked Knowledge of the Alleged Protected Activity. ....................3

C.   Rice Would Have Terminated Plaintiff Absent Any Protected Activity............................4

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ambrose v. Township of Robinson*,
　303 F.3d 488 (3d Cir. 2002)......................................................................................6

*Beacom v. Oracle America, Inc.*,
　2015 WL 2339558, 2015 U.S. Dist. LEXIS 66599 (D. Minn. Mar. 11, 2015) .......................4

*Kuduk v. BNSF Railway Co.*,
　768 F.3d 786 (8th Cir. 2014) ......................................................................................5

*Portes v. Wyeth Pharmaceuticals, Inc.*,
　2007 WL 2363356, 2007 U.S. Dist. LEXIS 60824 (S.D.N.Y. Aug. 20, 2007).......................5

*Rudolph v. National Railroad Passenger Corp.*,
　2013 WL 1385560 (U.S. DOL Mar. 29, 2013).................................................................5

*Wiest v. Lynch*,
　710 F.3d 121 (3d Cir. 2013)..............................................................................3, 4, 7

*Wiest v. Tyco Electronics Corp.*,
　812 F.3d 319 (3d Cir. 2016).................................................................................5, 7

Despite exceeding the Court's page limit by seven pages and citing numerous alleged "facts" with no support in the record, Plaintiff has failed to create a genuine issue of material fact as to any of his claims.[1]  It remains undisputed that Rice terminated Plaintiff's employment after an investigation—which Plaintiff admits occurred—showed that he was engaging in conduct that the decision maker, Daniel Rice, reasonably viewed as a conflict of interest warranting termination.  Instead of coming forward with actual facts to support his claim, Plaintiff improperly asks this Court to second guess Rice's investigation and termination, making a variety of assertions that have no basis in the record—all of which should be rejected.

### A.    Plaintiff's Testimony Shows He Did Not Engage in Protected Activity.

Plaintiff's "insinuation" that Silver Creek Services ("SCS") was selected as a service provider "for the wrong reasons" is not protected activity under SOX.[2]  To avoid that conclusion, Plaintiff invites the Court to ignore what he actually said to Tunde Ajayi and Toby Rice and focus on his post hoc reinterpretation of his communication.  That is misguided, as an employee cannot be the subject of retaliation under SOX without first communicating concerns about fraud.  As the Third Circuit has made clear, the employee must identify "conduct that falls within the ample bounds of the anti-fraud laws."  *Wiest v. Lynch*, 710 F.3d 121, 134 (3d Cir. 2013) (emphasis added).  It is the "the conduct that is the subject of the communication"—not a plaintiff's reimagining of that communication during litigation—that is the focus.  *Id.* at 132.  It is not enough for Plaintiff to claim after-the-fact that he believed Rice was violating (or about to

---

[1] Plaintiff failed to separately respond to Rice's CSMF.  *See* LCvR 56(C)(1).  So the facts in Rice's CSMF should be deemed admitted.  *See* LCvR 56(e).

[2] Plaintiff does not attempt to argue that his communication to Ajayi about Lo and the alleged EOG data is protected activity.  Thus Rice does not address that argument here, but it addressed the issue at length in its prior filings..

violate) one of the provisions in Section 806; instead, he "must submit some evidence that, at the time of the complaints, he held this belief." *Beacom v. Oracle Am., Inc.*, 2015 WL 2339558, 2015 U.S. Dist. LEXIS 66599, at *12 (D. Minn. Mar. 11, 2015).

Here, there is no such evidence. Plaintiff hasn't cited anything to show that he subjectively believed that Rice was engaged in (or about to engage in) a securities violation at the time. To the contrary, it is undisputed that Plaintiff never said that it was illegal to use SCS, that it was a securities violation to use SCS, or that Ajayi's relationship with SCS had to be disclosed in an SEC filing. Rice CSMF ¶¶ 25, 30-31. Indeed, Plaintiff admits that he has "no idea" what the criteria are for when something has to be disclosed in a 10-K filing. *Id.* ¶ 38. Thus, Plaintiff's "insinuation" was not enough to put Ajayi and Toby Rice on notice that he believed Rice was violating the securities laws in Section 806. *See Wiest I*, 710 F.3d at 134.

Plaintiff now claims that "[t]his price lock-in was a securities issue because Defendant was about to lock-in the price of a supplier who had a related party conflict." Pl.'s Br. at 8 n.6. But he fails to cite any evidence connecting his involvement in the RFQ process and vendor evaluation and his communicating anything close to a "securities issue." *See* JSUF ¶ 50-56 (describing the RFQ process and Plaintiff's involvement). Instead, Plaintiff recalls only that, at the August 5 meeting, he did "air quotes that the incumbent [won] insinuating that," apparently, SCS should not have been selected. *Id.* ¶ 57. But the PowerPoint presentation that Plaintiff presented simply discussed the service providers that were selected and provided an overview of the RFQ process; the presentation did not conclude that the bid was not "competitive." Indeed, this argument ignores that there *was* a competitive RFQ process, which resulted in the selection of SCS. *Id.* ¶¶ 50-57. Therefore, any belief Plaintiff may have had is objectively unreasonable.

To further muddy the waters, Plaintiff tries to take credit for bringing the SCS issue to

light.  *See* Pl.'s Br. at 9.  However, he omits the key portion of Toby Rice's testimony:

> Q.     And so, according to Mr. Wutherich's presentation on the 5th, there wasn't just an appearance of conflict, there was a conflict?
>
> A.     **We knew that.  We've known that since Tunde disclosed his conflict of interest.**  The new information from August 10th was we have a robust RFQ, the guys have done their work . . . .

J.A. Ex. F, Toby Rice Tr. at 132:17-23 – 133: 1-2 (emphasis added).  In fact, Rice had known

Ajayi owned shares of SCS since 2014. JSUF ¶ 44.  Ajayi also fully disclosed his interest to his

completions team and again disclosed his interest in response to Rice's conflict of interest survey

in September 2015. *Id.* ¶¶ 45-47.  By 2015, everyone in the completions department was aware

of it.  *Id.* ¶ 49.  To be sure, some employees raised concerns about Ajayi's relationship and the

amount of money being spent with SCS to Jenkins. *Id.* ¶ 63.  But **Plaintiff never raised such**

**concerns**.  Rice CSMF ¶ 44. The idea that Rice terminated Plaintiff—who merely "insinuated"

that Rice was selecting SCS for the wrong reasons (JSUF ¶¶ 57-58)—yet took no action against

employees who actually raised concerns—including the "most vocal" one (JSUF ¶ 61)—is

preposterous.  *See Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 332 (3d Cir. 2016) ("*Wiest II*").

## B.     The Decision Maker Lacked Knowledge of the Alleged Protected Activity.

Rice is not arguing that Plaintiff had to "speak[] directly to the decision maker" to engage

in protected activity under SOX. *See* Pl.'s Br. at 14.  However, Daniel Rice's lack of knowledge

prevents Plaintiff from meeting the knowledge and contributing factor elements.  *See Rudolph v.*

*Nat'l R.R. Pass. Corp.*, 2013 WL 1385560, at *9 (U.S. DOL Mar. 29, 2013); *Kuduk v. BNSF Ry.*

*Co.*, 768 F.3d 786, 790-91 (8th Cir. 2014).[3]

---

[3] Although *Rudolph* and *Kuduk* arose under the Federal Railroad Safety Act, the court can look to them for guidance given the FRSA's similarity to SOX.  *See Portes v. Wyeth Pharms., Inc.*, 2007 WL 2363356, 2007 U.S. Dist. LEXIS 60824, at *10 n.4 (S.D.N.Y. Aug. 20, 2007).

Regarding SCS, Plaintiff fails to explain how anyone could have interpreted his "insinuation" as having anything to do with a perceived securities violation.  Plaintiff never brought up any issues related to fraud or any type of securities violation at the time.  Rice CSMF ¶¶ 30-31.  It is also undisputed that Daniel Rice was unaware that Plaintiff made **any** complaints about SCS.  Rice CSMF ¶ 53.  Without such evidence, Plaintiff cannot show that his alleged communication was a contributing factor in his termination.  *Cf. Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) (for protected activity to be a factor in a decision, "the decisionmakers must be aware").

Likewise, it is undisputed that Plaintiff only discussed the issue about Lo and the alleged EOG data with Ajayi.  JSUF ¶ 34.  And **Ajayi did not report what Plaintiff told him to any else at Rice**.  *Id.* ¶ 36.  End of the story: if no one else knew, it was not a contributing factor.

Instead of citing evidence to controvert these facts, Plaintiff spins a tale about how Rice used the alleged EOG data to its benefit, gave the credit to Lo, then terminated him and Ajayi "because [it] now had the EOG data to direct well completions."  Pl.'s Br. at 26.  None of this is supported by the record.  *See* Rice Responsive CSMF, ECF No. 81 at 26-43.  There is no evidence that the data was confidential.  *See, e.g.*, *id.* at 28.  There is no evidence that Rice used the data.  *Id.*  There is no evidence that Rice credited Lo with anything; Plaintiff is actually quoting from Lo's resume, not anything created by Rice. *Id.* at 42.  There is no evidence that Rice terminated Ajayi and Plaintiff because they weren't needed to run the competitions department; indeed, that makes no sense because Rice eventually filled their former positions. Rice CSMF ¶¶ 37, 61.  Most importantly, there is no evidence tying any of this to the statement that Plaintiff made to Ajayi about Lo—**which Ajayi repeated to no one**.  JSUF ¶ 36.

### C.   Rice Would Have Terminated Plaintiff Absent Any Protected Activity.

Rice terminated Plaintiff because its investigation showed he was using proprietary Rice

information and information related to Rice's trial of Drill2Frac to help sell Drill2Frac's product to competitors of Rice, for which he was receiving compensation. Rice CSMF ¶ 51. While Plaintiff invites the Court to second guess that decision, he doesn't dispute that the investigation occurred. *See* Pl.'s Br. at 24 (". . . upon receipt of the second disclosure, Bruce Jenkins initiated a conflict of interest investigation of [Plaintiff]."). There is no evidence linking the investigation or the termination decision to either of Plaintiff's communications.

Instead, Plaintiff claims—without citing any evidence—that Jenkins "had knowledge of [his] protected activity." Pl.'s Br. at 28. However, Jenkins testified that he was unaware Plaintiff had expressed any dissatisfaction about SCS or made any communications about Lo/EOG. Rice CSMF ¶¶ 44-45. Plaintiff cannot create a genuine dispute as to these facts by asking the Court to draw speculative inferences unsupported by the record. *See Wiest*, 812 F.3d 332 n.8. To be sure, Jenkins "had knowledge of the SCS conflict from the beginning." Pl.'s Br. at 29. But, as Plaintiff's own factual narrative makes clear, that knowledge did not come from Plaintiff. As noted, Ajayi disclosed his interest in Rice's 2015 conflict survey, and other Rice employees—but not Plaintiff—had approached him about Ajayi's relationship. JSUF ¶¶ 47, 63.

What's more, the record contradicts Plaintiff's claim that Jenkins' investigation "uncovered nothing." *See* Rice CSMF ¶¶ 42-52. Plaintiff himself admitted the core fact that the investigation uncovered: during his employment with Rice, he communicated with Rice's competitors on behalf of Drill2Frac, and he received payment by Drill2Frac for making introductions. *Id.* ¶ 5. Likewise, Plaintiff's assertions that the investigation was "perfunctory" and "Jenkins' investigation did not include the key witnesses" are not sufficient to cast doubt on Rice's rationale. After all, even if the investigation were incomplete (which Rice denies), it is not the Court's role to second guess that decision. *See Wiest II*, 812 F.3d at 333.

Date: November 26, 2019

Respectfully submitted,

*/s/ Jaime S. Tuite*
Jaime S. Tuite (PA 87566)
jaime.tuite@bipc.com
Ryan J. Wilk (PA 316696)
ryan.wilk@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA  15219-4412410
Telephone:  412-562-8800
Fax:  412-562-1041

*Attorneys for Defendant, Rice Energy Inc.*
*a.k.a. EQT RE LLC*